UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RUFUS WEST,

                    Plaintiff,

        v.                                          Case No. 17-cv-482-pp

JOHN KIND, SCOTT ECKSTEIN,
PETE ERICKSEN, BRIAN FOSTER,
SARAH COOPER, BRAD HOMPE,
CINDY O'DONNELL, and JOHN AND JANE DOES,

                    Defendants.

---

**AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO
PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 6),
SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, DENYING PLAINTIFF'S
MOTION TO APPOINT COUNSEL (DKT. NO. 10) AND DIRECTING
PLAINTIFF TO FILE AMENDED COMPLAINT IF HE WANTS TO PROCEED**

---

The plaintiff, a Wisconsin state prisoner who is representing himself,

filed this lawsuit under 42 U.S.C. §1983, dkt. no. 1, along with a motion for

leave to proceed without prepayment of the filing fee, dkt. no. 6. The plaintiff

also has filed a motion to appoint counsel, dkt. no. 10, and a supplemental

complaint, dkt. no 11. This order resolves the motions and screens the

complaint.

I.      **Motion for Leave to Proceed without Prepayment of the Filing Fee
        (Dkt. No. 6)**

The Prison Litigation Reform Act (PLRA) applies to this case because the

plaintiff was incarcerated when he filed the complaint. 28 U.S.C. §1915. The

PLRA allows a court to give an incarcerated plaintiff the ability to proceed with

1

his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b).

On April 19, 2017, the court ordered the plaintiff to pay an initial partial filing fee of $29.97. Dkt. No. 9. The plaintiff paid that fee on May 2, 2017. Accordingly, the court will grant the plaintiff's motion. The court will require the plaintiff to pay the remainder of the filing fee over time as set forth at the end of this decision.

## II.    Screening the Plaintiff's Complaint (Dkt. No. 1)

The PLRA requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.(citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United

2

States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.     The Plaintiff's Allegations

The plaintiff is incarcerated at the Green Bay Correctional Institution (GBCI). Dkt. No. 1 at 1. The defendants are GBCI Security Director John Kind, GBCI Warden Scott Eckstein, former GBCI Security Director Pete Ericksen, former GBCI Warden Brian Foster, GBCI Deputy Warden Sarah Cooper, Corrections Complaint Examiner Brad Hompe, Cindy O'Donnell (who represents the Secretary of the Wisconsin Department of Corrections (DOC)), John Doe and Jane Doe. Id. at 1-2.

The plaintiff, who has been incarcerated since 1994, embraced Islam in 1995. Id. at 2-3. Islamic law requires Muslims to demonstrate modesty by "not exposing [their] nakedness when alone, except when there's a need to undress, or to anyone except [a man's ] wife." Id. at 2. Islamic law prohibits Muslims from exposing their nakedness to members of the opposite sex, unless that person is a spouse. Id. The plaintiff challenges two strip searches, one that took place on July 29, 2014, and the other on July 2, 2016. Id. at 3, 4.

1. *July 29, 2014 Strip Search*

On July 29, 2014, a security staff member ordered the plaintiff to go to the Rotunda for a random urine analysis test. Id. at 3. The plaintiff has had these tests in the past and was never subjected to a strip search beforehand. Id. When the plaintiff arrived in the Rotunda, defendant John Doe, acting on the orders of defendants Ericksen, Foster, Cooper and John Doe, ordered the plaintiff to go to the visiting area for a strip search. Id. The plaintiff told defendant John Doe that he shouldn't have a strip search for a random urine analysis test. Id. Defendant John Doe, acting on the orders of defendants Ericksen, Foster, Cooper and John Doe, threatened that if the plaintiff didn't comply, he would be placed in punitive segregation. Id.

A prisoner who doesn't comply with a strip search is forcibly strip searched, which involves restraining the prisoner, cutting off his clothes and examining his naked body by touching him everywhere and exposing private parts of his body. Id. "Under the threat of being abused and humiliated by GBCI staff's actions" in conducting a forcible search, the plaintiff "complied with the strip search and suffered the extreme humiliation and emotional trauma as a Muslim being illegally strip searched." Id. at 4.

On August 10, 2014, the plaintiff filed an inmate complaint about the strip search. Id. In response to his complaint, institution staff determined that the plaintiff should not have been strip searched, and should instead have been pat searched under DAI policy 306.17.01, which provides that staff shall "[p]erform a personal search 'pat search' prior to obtaining a sample on all

random tests." Id. The decision on the inmate complaint recommended that the complaint be affirmed, noted that the error had been communicated to the Security Director, and directed that copies of report be routed "to the Security Director and Administrative Captain to ensure this information is shared with all Security Supervisors and those they supervise." Id.

        2.     *July 2, 2016 Strip Search*

On July 2, 2016, after a visit with a friend, the plaintiff went to the strip search area to be searched under the policy that provides for prisoners to be strip searched after contact visits. Id. When it was the plaintiff's turn to be strip searched, a female correctional officer (who is not a defendant) approached him and ordered him to strip. Id. at 4-5. The plaintiff asked her "how she was able to do that," and she responded, "I'm a dude." Id. at 5. The plaintiff looked at the male officers in the area to see if this was a prank, and they just looked down at the floor. Id. The plaintiff began to panic because he could tell that the officer was a woman, and exposing his nakedness to her would violate his Islamic beliefs. Id. He also knew that if he refused to comply he would be subjected to a forced strip search. Id. After repeating his question to the female correctional officer and receiving the same response, the plaintiff asked the male officers if one of them would strip search him, "which one of them did while she looked on and observed." Id. "It was later brought to [the plaintiff's] attention [that the female correctional officer] is a female claiming to be a male and therefore is afforded all of the duties that the male officers perform without discrimination." Id.

The plaintiff anticipated another encounter with the female officer. Id. On July 7, 2016, in an attempt to avoid future encounters, he wrote to defendants Kind and Eckstein and requested an "exemption from exposing my nakedness to the opposite sex […] because it is against Islam." Id. at 6. On July 12, 2016, defendant Eckstein responded to the plaintiff's request, stating that he had discussed the plaintiff's concerns with the Security Director and that he had "reviewed the situation and the officer in question is a male and is qualified to complete these duties." Id. Eckstein further stated that "[i]f in the future you are directed to submit to a strip search by this individual or any other male staff member it is my expectation that you will comply." Id. Defendant Kind also responded to the plaintiff's request. Id. He stated, "This person is a male and any further issues on this will result in discipline for you." Id.

On September 13, 2016, defendant Hompe responded to the plaintiff's inmate complaint about the incident by approving the strip search; the plaintiff alleges that he failed to intervene on the plaintiff's behalf. Id. On September 29, 2016, defendant O'Donnell responded to the plaintiff's complaint about the incident by approving the strip search; the plaintiff alleges that she, too, failed to intervene on the plaintiff's behalf. Id.

### 3.    *Causes of Action and Requests for Relief*

The plaintiff claims that the defendants' actions violated his right to be free from "the illegal strip searches that were demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." Id. He claims that the strip searches

6

"were conducted as part of a course of calculated harassment intended to humiliate and inflict psychological pain unrelated to prison needs." Id. The plaintiff also claims that the strip searches violated his "rights to practice Islam by not being subjected to illegal strip searches, and violated the RLUIPA via failing to accommodate [the plaintiff] by not imposing illegal strip searches on him." Id. He alleges that the strip searches violated his right "to not have the female officer's issue of claiming to be a male trump [the plaintiff's] right to practice Islam by not having her strip search him." Id. at 6-7. The plaintiff claims that the defendants violated the First, Fourth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, the Wisconsin Constitution, the Religious Land Use and Institutionalized Person Act of 2000 (RLUIPA), and the DOC's rules and policies. Id. at 7.

The plaintiff seeks injunctive relief prohibiting the defendants from allowing female staff to strip search him. Id. He also seeks $1,000,000 from each defendant. Id.

B.      The Court's Analysis

Based on the court's reading of the complaint, it appears that the plaintiff has brought unrelated claims in a single case. Under Federal Rule of Civil Procedure 18(a), "[u]nrelated claims against different defendants belong in different suits" to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims,

7

as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Under this rule, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George, 507 F.3d at 607. Moreover, joinder of multiple defendants into one case is proper only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

The plaintiff has brought claims against defendants Ericksen, Foster, Cooper and John Doe based on their alleged involvement in the July 29, 2014, strip search. He has brought claims against four different defendants—Kind, Eckstein, Hompe and O'Donnell—resulting from their alleged participation in the July 2, 2016, strip search. While both sets of claims involve allegations of unlawful strip searches, the defendants allegedly involved in each search are different, and the searches occurred on different dates. The plaintiff has not asserted a claim against all of the defendants, nor has he asserted a claim based on the same transaction. He alleges a "series of occurrences"—two strip searches—but neither the factual nor legal analysis of the two incidents is the same.

In George, the Seventh Circuit told district courts that such complaints should be "rejected." George, 507 F.3d at 607. So the court will not allow the plaintiff to proceed on the original complaint. The court will allow the plaintiff

to file an amended complaint, incorporating either the facts and defendants allegedly involved in the July 29, 2014, strip search or the facts and defendants allegedly involved in the July 2, 2016, strip search. If the plaintiff wants to pursue claims related to both searches, he must file a second, separate complaint containing the facts and allegations of whichever search he does not include in the amended complaint.

An amended complaint supersedes, or takes the place of, a prior complaint. See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1057 (7th Cir. 1998). This means that the plaintiff cannot simply filed a document entitled "Amended Complaint," and then say, "see the original complaint for my claims." The amended complaint must contain all of the facts relating to all of the defendants involved in the search included in that complaint. The plaintiff should write the word "Amended" on the first page, next to the word "Complaint." He should put the case number for this case—17-cv-482—in the place provided on the first page for the case number. If the plaintiff files an amended complaint that complies with this order, it will become the operative complaint in this case, and the court will screen it as required by 28 U.S.C. §1915A. (The court also will screen any other complaints the plaintiff files with regard to other alleged unlawful searches.)

## III.    Supplemental Complaint (Dkt. No. 11)

On November 17, 2017, the plaintiff filed a document he called "Plaintiff's 42 U.S.C. §1983 Supplemental Complaint." Dkt. No. 11. In this pleading, names new defendants—complaint examiner Emily Davidson and Security

Supervisor John Doe. Id. at 1. The plaintiff alleges that on September 17, 2017, he was subjected to an unlawful strip search by an unnamed person, in violation of federal and state law. Id. at 2-3. He alleges that the security supervisor decided to conduct the strip search; that Eckstein (named in the original complaint) accepted the complaint examiner's recommendation to dismiss his complaint about the search; that Davidson approved the security advisor's decision; and that O'Donnell (named in the original complaint) refused to intervene on his behalf. Id. at 2.

In short, the plaintiff's supplemental complaint involves a third allegedly illegal search, on a different date, involving a different set of facts against a different group of defendants (although two of those defendants allegedly had been involved in earlier searches). For the reasons the court explained above, the court will not allow the plaintiff to "supplement" his original complaint with these claims. If he wants to pursue these claims, he must file a separate complaint—a separate lawsuit—against these defendants based on these allegations.

## IV.    Plaintiff's Motion to Appoint Counsel (Dkt. No. 10)

The plaintiff has filed a motion asking the court to appoint counsel to represent him. Dkt. No. 10. He states that he is unlearned in the law related to the issues in the case, and that his access to legal materials related to those issues have been "futile" in the prison's law library. Id. at 1. He also says that he is indigent, doesn't have a job, and can't afford counsel. He explains that he tried to find a lawyer himself, and he lists three lawyers whom he contacted. Id.

In a civil case, the court has discretion to decide whether to recruit an attorney for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Generally, in this district, a plaintiff must contact at least three attorneys in an effort to hire counsel on his own. A plaintiff must provide the court with the names of the attorneys he contacted as well as the dates of contact and copies of any letters the plaintiff received in response to the contact.

After the plaintiff makes that reasonable attempt to hire counsel, the court then decides "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff states that he contacted three attorneys, and he has included a letter from one of the attorneys declining to represent him. Dkt. Nos. 10, 10-1. The court finds that the plaintiff has satisfied the initial requirement for appointment of counsel. The court will not, however, recruit counsel for the plaintiff at this time.

Almost every inmate who files a case in federal court asks the court to appoint him or her a lawyer. Most inmates are indigent. Most have no legal training. Most have to wait their turn to use the law library, and don't get as much time there as they would like. The court does not have money to pay lawyers to represent inmates; it must rely on volunteer lawyers in the community. There are not enough volunteer lawyers to represent every inmate who asks for one. The court is able to appoint lawyers only when it is clear that the inmate has a valid claim, and that the case has become so complex that the plaintiff cannot handle it himself. The plaintiff's case has not reached that stage.

First, the plaintiff must amend his complaint, as the court has instructed above. Once he does that, the court will review that amended complaint. If the court finds that the amended complaint states a claim, it will require the defendants to respond to the complaint, and then it will set dates for exchanging discovery. Based on what the plaintiff has provided so far, the court is convinced that he can handle the case himself at this time. He has stated his allegations clearly and in detail, and there is no need for him to do any legal research in the library at this stage. The court will deny the plaintiff's motion without prejudice; this means that, if the case becomes more complicated at a later time, the plaintiff may renew his motion.

## V.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 6.

The court **DENIES without prejudice** the plaintiff's motion to appoint counsel. Dkt. No. 10.

The court **ORDERS** that, by the end of the day on **Friday, May 4, 2018**, the plaintiff shall file an amended complaint that complies with this order. The plaintiff must file that amended complaint in time for the court to receive it by the end of the day on May 4, 2018.

The court **ORDERS** that if it does not receive an amended complaint from the plaintiff by the end of the day on **May 4, 2018**, the court may dismiss the plaintiff's case for failure to prosecute.

The court **ORDERS** that the agency having custody of the prisoner shall collect from his institution trust account the $320.03 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the name and case number. If the plaintiff is transferred to another institution—county, state, or federal—the transferring institution shall forward a copy of this order, along with the plaintiff's remaining account balance, to the receiving institution.

The court will send a copy of this order to the Warden of the Green Bay Correctional Institution.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff,

who will scan and e-mail documents to the Court.[1] If the plaintiff is no longer

incarcerated at a Prisoner E-Filing Program institution, he must submit all

correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.

It will only delay the processing of the case.

The court reminds the parties to notify the court of any address changes.

If they do not do so, they may not receive important documents from the court,

and this could impact their rights in the case.

Dated in Milwaukee, Wisconsin this 30th day of March, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge
Correctional Institution, Green Bay Correctional Institution, Waupun
Correctional Institution, Wisconsin Secure Program Facility, Columbia
Correctional Institution, and Oshkosh Correctional Institution.