UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RUFUS WEST,

                Plaintiff,

v.                                               Case No. 17-cv-482-pp

JOHN KIND, WARDEN SCOTT ECKSTEIN,
PETE ERICKSEN, BRAD HOMPE,
CINDY O'DONNELL, JOHN AND JANE DOE,
and CO BUHLE,

                Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 15)**

---

Plaintiff Rufus West is a prisoner representing himself. He filed a complaint alleging that the defendants violated his constitutional rights. Dkt. No. 1. The court screened the complaint, found that it violated federal procedural rules because it tried to bring unrelated claims in a single case, and directed the plaintiff to file an amended complaint if he wanted to proceed. Dkt. No. 14 at 7-9. The plaintiff has filed an amended complaint, which this order screens under 28 U.S.C. §1915A.

**I.**     **Screening the Plaintiff's Amended Complaint**

    A.     <u>Federal Screening Standard</u>

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint

if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which the court can grant relief, or that seek monetary relief from a defendant who is immune that relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) that person was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. The Plaintiff's Allegations

The plaintiff in custody at the Green Bay Correctional Institution (GBCI). Dkt. No. 15 at 1. He has sued GBCI Security Director John Kind, GBCI Warden Scott Eckstein, Pete Ericksen, Corrections Complaint Examiner Brad Hompe,

Department of Corrections Secretary Cindy O'Donnell, Officer Buhle and John and Jane Doe. Id.

The plaintiff alleges that in 1995 he embraced Islam. Id. at 2. He states that Islamic law prohibits him from exposing his nakedness to anyone except his wife. Id. The plaintiff also states that under Islamic law, "males and females are identified and determined by the sex that Allah (i.e., the Creator) created them with at birth." Id. He alleges that he has been in prison since 1994, and has never been strip searched by a female staff member. Id. at 3.

According to the plaintiff, prison staff will forcibly strip-search a prisoner who refuses to voluntarily comply; they restrain the prisoner, cut off his clothes, and examine his naked body by touching him everywhere—"including under his penis, around his testicles, and in between his buttocks by spreading them." Id. On the other hand, a prisoner who complies with a strip search receives instructions to remove his clothes and follow commands, such as "[o]pen your mouth. Show me your armpits. Show me behind your ears. Lift your penis. Now lift your sack (i.e., testicles). Alright turn around and bend over at the waist and spread your butt cheeks. Now show me the bottoms of your feet and wiggle your toes." Id.

The plaintiff says that on July 2, 2016, after a visit with a friend, he went to the strip search area to be strip searched under a policy that requires all prisoners to submit to a strip-search after a contact visit. Id. Several officers were conducting strip searches. Id. According to the plaintiff, when it was his turn to be strip searched, defendant Buhle, a female correctional officer,

3

approached him and ordered him to strip. Id. The plaintiff states that he asked defendant Buhle how she was able to do that and she responded, "I'm a dude." Id. The plaintiff says he looked at the other correctional officers, "to see if this was a prank," but that they avoided eye contact with him. Id. He alleges that at this point, he "started to panic because he knew that Officer Buhle was a female based on her female features (breasts, face, voice and demeanor) and that exposing his nakedness to her would be in violation of his Islamic beliefs, and also that if he refused to comply with the strip search he would be subjected to the "abuse and humiliation" of a non-compliance strip-search. Id. at 3-4. The plaintiff says that he repeated his question to defendant Buhle, that she answered the same way and his "panic intensified." Id. at 4. The plaintiff alleges that he asked the nearby male officers if one of them would strip search him, "which one of them did, while she looked on and observed." Id.

The plaintiff indicates that "[i]t was later brought to [his] attention that Officer Buhle is a female claiming to be a male and therefore is afforded all of the duties that the male officers perform without discrimination." Id. at 4.

The plaintiff alleges that in anticipation of another encounter with defendant Buhle, he wrote defendants Kind and Eckstein and requested an "[e]xemption from exposing my nakedness to the opposite sex [ . . . ] because it is against Islam." Id. On July 12, 2016, defendant Eckstein allegedly denied the plaintiff's request:

> I have reviewed your correspondence and have also discussed your concerns with our Security Director. I have reviewed the situation and the officer in question is a male and is qualified to complete these duties. If in the future you are directed

> to submit to a strip search by this individual or any other male staff member it is my expectation that you will comply.

Id. at 4-5. The plaintiff alleges that in his denial of the plaintiff's request, defendant Kind stated, "This person is a male and any further issues on this will result in discipline for you." Id. at 5.

The plaintiff states that on September 13, 2016, defendant Hompe responded to the plaintiff's complaint about the strip search incident by approving the strip search and "further failed to intervene on the plaintiff's behalf." Id. On September 29, 2016, defendant O'Donnell allegedly responded to the plaintiff's complaint about the strip search incident by approving the strip search and "further failed to intervene on the plaintiff's behalf." Id.

The plaintiff claims that the defendants' actions violated his right to be free from the illegal strip search that was "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." Id. He states that the strip search "was conducted as part of a course of calculated harassment intended to humiliate and inflict psychological pain unrelated to prison needs." Id. The plaintiff claims that "[t]he strip search violated [his] rights to practice Islam by not being subjected to illegal strip searches, and violated the [Religious Land Use and Institutionalized Persons Act] via failing to accommodate [the plaintiff] by not imposing the illegal strip search on him." Id. The plaintiff also claims that the strip search violated [his] right to not have the female officer's issue of claiming to be a male trump [the plaintiff's] right to practice Islam by not having her strip search him." Id. The plaintiff contends that the defendants'

actions violated the First, Fourth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, the Wisconsin Constitution, the RLUIPA and the Wisconsin Department of Corrections' rules and policies. Id.

The plaintiff seeks injunctive relief prohibiting the defendants from allowing female staff to strip search him, $1,000,000 from each defendant and appointment of counsel. Id. at 6.

C. The Court's Analysis

The plaintiff alleges that defendant Buhle is a biological female who claims to be a male, and that GBCI treats Buhle as a male. The plaintiff alleges that because GBCI treats Buhle as a male, Buhle observed his strip search, violating the plaintiff's religious right not to be seen naked by a member of the opposite sex. The plaintiff does *not* allege that defendant Buhle conducted the strip search; he says that when the plaintiff objected to Buhle conducting the strip search, a male officer stepped in and conducted the search. The plaintiff's account of his correspondence with defendants Kind, Eckstein, Hompe and O'Donnell, however, shows that it is possible that Buhle could demand to strip-search the plaintiff in the future, and that GBCI would expect the plaintiff to comply with the strip search.

Prisoners have a right freely to exercise their religious beliefs. Canedy v. Boardman, 91 F.3d 30, 33 (7th Cir. 1996) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). To prove that prison staff violated his free-exercise rights under the First Amendment, a defendant must show that the defendants "personally and unjustifiably placed a substantial burden on his religious

6

practices." Thompson v. Holm, 809 F.3d 376, 379 (7th Cir. 2016) (citations omitted). A "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (quoting Thomas v. Review Bd., 450 U.S. 707, 717-17 (1981)). "A burden is unjustified if it is not reasonably related to a legitimate penological interest." Id. at 380 (citing Turner v. Safley, 482 U.S. 78, 89-91 (1987)).

At this early stage, the plaintiff has alleged sufficient facts to allow him to proceed on a claim that Buhle, Kind and Eckstein violated his right freely to exercise his religion, by subjecting him to pressure to violate his beliefs by submitting to a strip-search in front of, or by, an allegedly female officer.

"RLUIPA prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate 'that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" Koger v. Bryan, 523 F.3d 789, 796 (7th Cir. 2008) (quoting 42 U.S.C. §2000cc-1(a)(1)-(2)). Assuming that GBCI receives federal funds, the plaintiff has alleged that Buhle, Kind and Eckstein imposed a substantial burden on his First Amendment free exercise rights. He has also alleged that there was no compelling government interest in having Buhle search him, or observe the search; there were male officers available in the strip search area. The plaintiff may proceed on his RLUIPA claim against Buhle, Kind and Eckstein.

7

The plaintiff has not alleged facts to support an Eighth Amendment cruel-and-unusual-punishment claim. "A strip-search in jail or prison can be cruel and unusual punishment." King v. McCarty, 781 F.3d 889, 897 (7th Cir. 2015). An inmate can prevail on an Eighth Amendment claim if the strip-search was "motivated by a desire to harass or humiliate rather than by a legitimate justification." Id. (citations omitted). The plaintiff must show "that the defendants acted without a legitimate correctional purpose and for the purpose of humiliating him and/or subjecting him to gratuitous psychological injury." Id. at 899 (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). Even if a strip-search is justified, it still might violate the plaintiff's Eighth Amendment rights if it was "conducted in a harassing manner intended to humiliate and cause psychological pain." Mays v. Springborn, 575 F.3d 643, 649 (7th Cir. 2009). See also Fillmore v. Page, 358 F.3d 496, 505 (7th Cir. 2004); Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003).

The plaintiff does not allege that Buhle threatened to search him—or watched the search—to humiliate him. His own facts reveal that when he asked if a male officer could search him instead of Buhle, Buhle stepped aside. The plaintiff claims that the reason for his exposure in front of Buhle had to do with the institution's decision to treat Buhle as a male. These facts do not support a claim under the Eighth Amendment.

Nor has the plaintiff alleged fact to support a Fourth Amendment claim. "[T]he Fourth Amendment protects, to some degree, prisoners' bodily integrity against unreasonable intrusions *into* their bodies." King, 781 F.3d at 900

8

(citations omitted). The plaintiff has not alleged that the defendants searched the inside his body.

The Ninth Amendment states that "[t]he enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." U.S. CONSTITUTION, AMENDMENT IX. The court does not know why the plaintiff believes the defendants violated this amendment. "The Ninth Amendment is a rule of interpretation rather than a source of rights." Froehlich v. State, Dep't of Corr., 196 F.3d 800, 801 (7th Cir. 1999) (citing Quilici v. Vill. of Morton Grove, 695 F.2d 261, 271 (7th Cir. 1982) and other cases). "Its purpose is to make clear that the enumeration of specific rights in the Bill of Rights is not intended . . . to deny the existence of unenumerated rights." Id. (citing Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir. 1991)). The plaintiff has no Ninth Amendment claim.

The plaintiff has not explained how the facts he alleges violated the Fourteenth Amendment, but it is possible that he believes that Buhle, Kind and Eckstein discriminated against him because of his faith, denying him equal protection of the laws. The plaintiff's First Amendment claim covers this allegation, and "gains nothing by attracting additional constitutional labels." Conyers v. Abitz, 416 F.3d 580, 586 (7th Cir. 2005) (citing Graham v. Connor, 490 U.S. 386, 395 (1989) ("constitutional claims must be addressed under the most applicable provision")). The court will not allow the plaintiff to proceed on a Fourteenth Amendment equal protection claim.

9

The plaintiff alleges that the defendants' actions "are contrary to the 1st, 4th, 8th, 9th and 14th Amendments . . . to the Wisconsin Constitution." Dkt. No. 15 at 5. The Wisconsin Constitution does not have "amendments," and the plaintiff does not allege that the defendants violated any specific article or section of that document. The court will not allow him to proceed on Wisconsin constitutional claims. He also says that the defendants violated Department of Corrections rules and policies, but does not say which ones. The court will not allow him to proceed on that claim.

The plaintiff has sued Hompe, a complaint examiner who he says "approved" the search, and O'Donnell, who he says "approved the search" two weeks after Hompe. He also says that Hompe and O'Donnell failed to intervene on his behalf. A plaintiff may hold a prison official liable for failing to intervene, if he or she "*fails* to act with a deliberate or reckless disregard of the plaintiff's constitutional rights." Fillmore v. Page, 358 F.3d 496, 506 (7th Cir. 2004) (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)). A plaintiff asserting that a defendant failed to intervene must show that "the defendant knew about the [constitutional] violation and facilitated it, approved it, condoned it or turned a blind eye for fear of what he or she might see." Koutnick v. Brown, 351 F. Supp. 2d 871, 876 (W.D. Wis. 2004) (citing Morfin v. City of Chi., 349 F.3d 989, 1001 (7th Cir. 2003)). While it is a close call as to the two complaint examiners, at this early stage, the court will allow the plaintiff to proceed on a claim that Hompe and O'Donnell failed to intervene in

the alleged violation of his First Amendment free exercise rights and his rights under RUILPA.

The plaintiff will not allow the plaintiff to proceed on any claims against Pete Ericksen, John Doe or Jane Doe. He does not explain who these defendants are—were they correctional officers? Prison administrators?—or what they did to violate his rights.

D. The Plaintiff's Request for Counsel

In the "Relief" section of his amended complaint, the plaintiff asks the court to appoint a lawyer to represent him. Dkt. No. 15 at 6. In a civil case, the court may decide whether to recruit an attorney for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person must make a reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this district, a plaintiff must contact at least three attorneys trying to hire counsel on his own. He must provide the court with the names of the attorneys he contacted as well as the dates of contact and copies of any letters the plaintiff received in response to the contact.

After the plaintiff makes that reasonable attempt to hire counsel, the court decides "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks not only at the plaintiff's ability to try his case, but also at his

ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff has not told the court why he needs a lawyer at this stage. Previously, when it screened the original complaint, the court found that the plaintiff had made a reasonable attempt to find an attorney on his own. Dkt. No. 14 at 11. The plaintiff's amended complaint, however, is clear and easy to understand. He followed the instructions in the court's screening order well. He has extensive experience litigating in federal court. Given that, the court finds that the plaintiff can represent himself right now.

## II. Conclusion

The court **DISMISSES** defendants Ericksen, John Doe and Jane Doe.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's request to appoint counsel.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** the clerk's office electronically to send copies of the plaintiff's amended complaint (Dkt. No. 15) and this order to the Wisconsin Department of Justice for service on defendants Kind, Eckstein, Hompe, O'Donnell and Buhle.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** defendants Kind, Eckstein, Hompe, O'Donnell and Buhle to file a responsive pleading to the amended complaint within sixty days of receiving electronic notice of this order.

12

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated in Milwaukee, Wisconsin this 31st day of July, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**