UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RUFUS WEST,

                Plaintiff,

v.                                           Case No. 17-cv-482-pp

JOHN KIND, WARDEN SCOTT ECKSTEIN,
BRAD HOMPE, CINDY O'DONNELL,
and ISAAC BUHLE,

                Defendants.

---

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 24), DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 46), DENYING PLAINTIFF'S MOTION FOR COSTS AND FEES (DKT. NO. 47), DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 53), DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 54), AND DENYING PLAINTIFF'S MOTION FOR CEASE AND DESIST HARASSMENT ORDER (DKT. NO. 65)**

---

      Plaintiff Rufus West is a prisoner who is representing himself. On July 31, 2018, the court screened his amended complaint and allowed him to proceed on a claim that defendants Buhle, Kind and Eckstein violated his right to freely exercise his religion by subjecting him to pressure to violate his beliefs by submitting to a strip-search in front of, or by, an allegedly female officer. Dkt. No. 16 at 7. The court also permitted the plaintiff to proceed on a claim under the Religious Land Use and Institutionalized Persons Act based on allegations that Buhle, Kind and Eckstein imposed a substantial burden on his First Amendment free exercise rights and that there was no compelling interest in having Buhle search him or observe the search. Id. Finally, the court allowed

1

the plaintiff to proceed on claims against defendants Hompe and O'Donnell for allegedly failing to intervene in the violation of the plaintiff's rights. Id. at 10-11.

The plaintiff has filed a motion to compel (dkt. no. 24), a motion for summary judgment (dkt. no. 42), a motion for sanctions (dkt. no. 46), a motion for costs and fees (dkt. no. 47), a motion to strike defendants' response to his motion for summary judgment (dkt. no. 53), a motion for default judgment (dkt. no. 54) and a motion for a cease and desist harassment order (dkt. no. 65). The defendants have filed a motion for summary judgment (dkt. no. 28). This order addresses the plaintiff's non-dispositive motions; the court will address the parties' motions for summary judgment in a subsequent order.

**A.     Plaintiff's Motion to Compel (Dkt. No. 24)**

In his motion to compel discovery, the plaintiff states that he asked defendant Buhle for answers to five questions and for documents that would clearly prove that Buhle is a female. Dkt. No. 24 at 1, 2. The plaintiff asked defendant Buhle to provide: his full birth name; his gender designated at birth; whether he was born with a penis or a vagina; any documents identifying him as a female; any medications, surgeries, therapy, and other procedures that are hormone related; a birth certificate; any birth certificate that shows a change of birth name; any document identifying Buhle as a female; the earliest document identifying Buhle as a male; and his driver's license.[1] Dkt. No. 24-1 at 3-7. The

---

[1] In the amended complaint, the plaintiff asserted that a "female officer named Buhle" tried to strip search him, and that he knew the officer was female "based on her female features (breasts, face, voice and demeanor)." Dkt. No. 15

2

plaintiff attached to his motion the defendants' objections to the plaintiff's interrogatories and to his requests for production of documents, both dated January 14, 2019. Id. at 3-5, 6-8. The defendants objected to these requests as irrelevant or confidential. Id. The plaintiff asks the court to compel the defendants to provide him with the requested information. Dkt. No. 24 at 2.

In their February 20, 2019 response to the plaintiff's motion, the defendants contend that the information the plaintiff seeks is irrelevant to the plaintiff's request for injunctive relief because the plaintiff is no longer incarcerated at Green Bay Correctional Institution, where Buhle works. Dkt. No. 25 at 2. According to the defendants, the plaintiff transferred to Redgranite Correctional Institution on February 15, 2019 and will not be subject to future strip searches by Buhle. Id. The defendants contend that this transfer moots the plaintiff's request for injunctive relief, at least to the extent that he wants to avoid future searches by Buhle. Id. The defendants argue that to the extent that the plaintiff wants an order prohibiting the defendants from allowing female staff to strip search him, Buhle's personal history has no bearing on this aspect of the plaintiff's claim now that he is at Redgranite. Id. at 3.

The defendants also assert that the discovery is not relevant to the plaintiff's request for damages because they are entitled to qualified immunity. Id. According to the defendants, no case has clearly established that male inmates have a First Amendment right to avoid strip searches by transgender

---

at ¶20. Defendant Isaac Buhle has denied that he is a female officer. Dkt. No. 21 at ¶20.

male officers. Id. at 5. They state that even if the plaintiff could prove Buhle is a transgender male, he cannot show he had a clearly established First Amendment right not to be strip searched by Buhle or in Buhle's presence. Id. The defendants say that the plaintiff did not state a claim under the Eighth Amendment, which is how most modern strip search claims in this circuit are analyzed, and that these cases do not clearly establish that a male inmate has a First Amendment free exercise right to avoid strip searches by transgender males. Id. at 7.

The defendants also maintain that a policy allowing transgender male officers to strip search male inmates does not target the plaintiff's religion. Id. According to the defendants, they also are entitled to qualified immunity because it is not clearly established that an inmate can state a First Amendment claim against a neutral policy. Id. at 7-8.

The defendants go on to argue that a policy allowing transgender male officers to strip search male inmates is reasonably related to legitimate penological interest. Id. at 8. They state that if the neutrality of the policy does not end the inquiry, the court would have to consider whether being strip searched by a transgender male officer (or in his presence) substantially burdened the plaintiff's practice of Islam and whether the policy was, nevertheless, reasonably related to legitimate penological needs. Id. The defendants assert that, for the purposes of this motion, they do not challenge whether the plaintiff's practice of Islam was burdened. Id. They contend, however, that the plaintiff cannot meet his burden to show it is clearly

4

established that allowing a transgender male to strip search male inmates is not reasonably related to legitimate penological needs. Id. The defendants state that they are unaware of any case which has considered this issue. Id. The defendants also assert that releasing the requested information could pose a security risk. Id. at 10.

The plaintiff replied on March 20, 2019, asserting that the fact that he is no longer a prisoner at Green Bay does not mean that he will never be imprisoned there in the near or distant future, or that Buhle will not be transferred to work in a prison where the plaintiff is imprisoned. Dkt. No. 26 at 1. He also states that his claim is broadly addressed to the DOC as a whole as a result of the remaining defendants failing to intervene on the plaintiff's behalf, by asserting that the plaintiff's failure to submit to a strip search "by this individual or any other male staff member it is my expectation that you will comply." Id. According to the plaintiff, this assertion by the defendants includes not only Buhle, but other staff members like Buhle, wherever the plaintiff is within the DOC, and that failure to comply will result in the plaintiff being "disciplined." Id. He states that this is a decision that affects the DOC state-wide because the DOC secretary is the final decision-maker under Administrative Code §DOC 310.14. Id. at 1-2.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). When determining whether discovery is appropriate, the court considers "the importance of the issues at stake in the

5

action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

The question of whether Buhle is a transgender male is relevant to the plaintiff's claim that being searched by or in the presence of a transgender male constitutes a violation of his First Amendment rights. But there is no need for the court to require the defendants to provide the detailed information the plaintiff has requested in discovery. On May 6, 2019, the defendants filed a declaration from Buhle in support of the defendants' motion for summary judgment. Dkt. No. 35. In that declaration, Buhle states that he was assigned a female at birth, but now identifies as a man, and that he identified himself as a man when he was hired at Green Bay. Id. at ¶¶ 6-7. Because Buhle has confirmed that he was born a female, the plaintiff's motion to compel is moot, and the court will deny it.

Even if the plaintiff's motion was not moot, the court would have denied it as to most of his requests, because many were highly personal and appear to have been designed to embarrass Buhle. Some of the requests also sought information that is not relevant to the question of whether Buhle was born a female.

**B.     Plaintiff's Motion for Sanctions (Dkt. No. 46)**

The plaintiff's motion for sanctions is based on the defendants' alleged "discovery obstruction." Dkt. No. 46. He states that, in response to his

6

complaint, the defendants lied twice by denying that Buhle was a female. Id. The plaintiff also states that the defendants then blocked his discovery requests to prove that Buhle is a female, which resulted in him having to file a motion to compel. According to the plaintiff, this left him guessing and without the ability to acquire documents to prove "when she started publicly claiming that she wanted to be a male, and when, and who all knew in the DOC that she wanted to be male, and when, and who, approved for her to be allowed to strip search male prisoners, and under who's authority." Id. The plaintiff contends that an appropriate sanction for the defendants' deliberate blocking of the plaintiff's ability to litigate his case by refusing to provide him with discovery would be for the court to grant his motion for summary judgment, deny the defendants' motion for summary judgment and award him the relief he requested in the complaint. Id.

     The plaintiff has not presented the court with any evidence that the defendants "lied" about Buhle. In their answer to the complaint, they denied that Buhle is a female. Dkt. No. 21 at ¶. Buhle himself has declared that he identifies as male, and did when he started working at Green Bay. In their responses to the plaintiff's request for production of documents, the defendants stated that Buhle's first name is Isaac and that he is a male. Dkt. No. 24-1 at 6. The plaintiff believes that these are "lies," because, in the plaintiff's mind, the fact that Buhle was born a female means that he is, and always will be, a female. The plaintiff has a right to believe what he believes. But it is not a lie for a transgender male to identify himself as a male, or for his lawyers to do so.

7

There is no reason for the court to impose sanctions on the defendants. They have done nothing wrong. The court will deny this motion.

**C.     Plaintiff's Motion for Costs and Fees (Dkt. No. 47)**

The plaintiff asks the court to award him the costs and fees related to the litigation of his motion to compel. Dkt. No. 47. As explained above, the court will deny as moot the plaintiff's motion to compel, based on the information the defendants provided in support of their motion for summary judgment. Even if that information had not been provided, the court would have denied the plaintiff's motion to compel on the merits, because the plaintiff is not entitled to costs and fees.

**D.     Plaintiff's Motion to Strike (Dkt. No. 53)**

The plaintiff has filed a motion to strike the defendants' response to his motion for summary judgment. Dkt. No. 53. According to the plaintiff, he filed his motion for summary judgment on May 6, 2019, and the defendants' response was due on June 5, 2019. Id. at 1. The plaintiff states that the defendants' June 12, 2019 response was tardy and that they have waived their opportunity to respond to his motion. Id. at 2. He also states that the court should strike the response because it does not comply with Federal Rule of Civil Procedure 56 in that it simply refers to the defendants' summary judgment motion. Id.

Court records reveal that the clerk's office received and docketed the plaintiff's motion for summary judgment on May 13, 2019. Dkt. No. 42. The defendants had thirty days from that date, or until June 12, 2019, to file their

response. See Civil L.R. 56(b)(2) (E.D. Wis.). The defendants timely filed their response on June 12, 2019. Dkt. Nos. 51, 52. Also, the defendants filed a valid response brief, dkt. no. 51, and they filed a response to the plaintiff's proposed findings of fact, dkt. no. 52. The court will deny the plaintiff's motion to strike.

**E.     Plaintiff's Motion for Default Judgment (Dkt. No. 54)**

The plaintiff has filed a notice/application for default based on the defendants' alleged failure to submit a timely response to his motion for summary judgment. Dkt. No. 54. The court already has explained that the defendants' response was timely, but even if it hadn't been, default judgment is not the appropriate remedy for a plaintiff who receives an untimely response to a motion for summary judgment. Even if the defendants had not responded at all, the court still would have had to review the plaintiff's motion to determine whether he was entitled to judgment as a matter of law. If the law did not support his claims, the court could not have granted judgment in his favor, even if the defendants had not responded.

**F.     Plaintiff's Motion for a Cease and Desist Harassment Order (Dkt. No. 65)**

The plaintiff contends that prison staff at Redgranite, where he currently is confined, have been harassing him and retaliating against him because of this case. Dkt. No. 65. He states on June 25, 2019, the day after he filed his summary judgment reply brief in this case, he was fired from his E-Unit job and moved to the F-Unit because, according to the Unit Manager, "[t]here was a discussion and it was determined that E-Unit may not be a good fit for you[.]" Dkt. No. 65 at 1. The plaintiff states that he received assistance on the

summary judgment motion from two inmates and now that he is on the F Unit, he is no longer around these inmates or anyone who knows how to do legal work. Id. The plaintiff also states that his new unit has inmates who shower in the nude, which is against the plaintiff's religious beliefs. Id.

Next, the plaintiff states that on July 28, 2019, a Captain Seawaltz ordered him to be strip-searched without reason. Id. at 1-2. The plaintiff asserts that he was taken to "Intake" and CO Schultz strip searched him. Id. at 2. When he returned to his cell, the plaintiff retrieved his writing materials and went to the "Sgts. Station" to get the names of the staff who were present to include them on his inmate complaint. Id. The plaintiff states that Capt. Seawaltz told him to make sure he spelled his (Seawaltz's) name right and that the female officer who searched the plaintiff's cell said her name CO Burmeister. Id. The plaintiff alleges that as he walked away, CO Burmeister told him to bring all of his legal work and put in a box. Id. He states that about an hour and a half later, he received his legal work back, but not his antennae. Id.

The plaintiff contends that the above-described events show a clear pattern of retaliation and harassment against him because of this case. He asks the court to issue an order prohibiting the defendants and other prison officials from harassing him and retaliating against him because of his involvement in this case.

The court fails to see the link between the above-described events and the plaintiff's case. The plaintiff has sued defendants at *Green Bay*, not

Redgranite. His claims against people at Redgranite are not relevant to the claims in this case. The court will deny the plaintiff's motion.

**G.   Conclusion**

The court **DENIES AS MOOT** the plaintiff's motion to compel. Dkt. No. 24.

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 46.

The court **DENIES** the plaintiff's motion for costs and fees. Dkt. No. 47.

The court **DENIES** the plaintiff's motion to strike defendants' response to plaintiff's motion for summary judgment. Dkt. No. 53.

The court **DENIES** the plaintiff's motion for default judgment. Dkt. No. 54.

The court **DENIES** the plaintiff's motion for a cease and desist harassment order. Dkt. No. 65.

Dated at Milwaukee, Wisconsin this 17th day of September, 2019.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**