UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RUFUS WEST,

            Plaintiff,

v.                                               Case No. 17-cv-482-pp

JOHN KIND, WARDEN SCOTT ECKSTEIN,
BRAD HOMPE, CINDY O'DONNELL
and ISAAC BUHLE,

            Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 104), GRANTING IN PART DEFENDANTS' MOTION TO DISMISS INJUNCTIVE RELIEF CLAIMS (DKT. NO. 117) AND DISMISSING CASE**

        The Court of Appeals for the Seventh Circuit remanded this case, concluding that the plaintiff could proceed on his Fourth Amendment claim based on allegations that he was subjected to a strip search by a member of the opposite sex, a female (transgender male) officer. West v Radtke, 48 F.4th 836, 853 (7th Cir. 2022). At screening, this court had not allowed the plaintiff to proceed on that claim, based on the ruling in King v. McCarty, 781 F.3d 889, 900 (7th Cir. 2015), which held that an incarcerated individual has no Fourth Amendment privacy interest against visual inspections of his body. See West, 48 F.4th at 852. After this court dismissed the case, the Seventh Circuit overruled King and held that "the Fourth Amendment protects a right to bodily privacy for convicted prisoners, albeit in a significantly limited way, including during visual inspections." West, 48 F.4th at 852 (quoting Henry v. Hulett, 969

1

F.3d 769, 774, 779 (7th Cir. 2020) (*en banc*)). The Court of Appeals remanded the case and this court recruited counsel for the plaintiff; the defendants then filed a responsive pleading to the plaintiff's amended complaint. Dkt. Nos. 80, 81, 88. The defendants have filed a motion for judgment on the pleadings. Dkt. No. 104. This order grants the defendants' motion regarding the plaintiff's claim for damages under the Fourth Amendment. It also grants the defendants' motion to dismiss the plaintiff's claim for injunctive relief as it pertains to his Fourth Amendment claim.

I.  **Amended Complaint's Allegations (Dkt. No. 15)**

In the amended complaint, the plaintiff alleges that on July 2, 2016, after a visit with an outside friend, he went to be strip searched in accordance with the rule that requires all incarcerated individuals to be strip searched after contact visits with outside visitors. Dkt. No. 15 at ¶19. When it was his turn, a "female officer named Buhle" approached to strip search the plaintiff. Id. at ¶20. The plaintiff alleges that he never had been strip searched by a female over the three-plus decades of his incarceration. Id. at ¶16. The plaintiff asked Buhle how Buhle was able to strip search him, and Buhle responded, "I'm a dude." Id. at ¶20. The plaintiff claims that he panicked and asked the male officers nearby to strip search him. Id. One of the male officers obliged and performed the strip search. Id. The plaintiff claims that Officer Buhle "looked on and observed." Id. The plaintiff states that he later learned that Buhle "is a female claiming to be a male and therefore is afforded all of the duties that the male officers perform without discrimination." Id. at ¶21.

2

The plaintiff alleges that after the strip search, he requested an exemption from cross-sex searches moving forward. Id. at ¶23. Defendant Eckstein allegedly denied the plaintiff's request, reasoning that Buhle "is a male and is qualified to complete these duties." Id. at ¶24. Eckstein also said, "If in the future you are directed to submit to a strip search by this individual or any other male staff member it is my expectation that you will comply." Id. Defendant Kind allegedly denied the plaintiff's request for an exemption and said, "This person is a male and any further issues will result in discipline for you." Id. at ¶25. The plaintiff states that he filed an administrative complaint about the incident and that in response, defendants Hompe and O'Donnell approved the strip search and failed to intervene on the plaintiff's behalf. Id. at ¶¶26-27.

For relief, the plaintiff sought injunctive relief "prohibiting the Defendants from allowing female staff to strip search him." Id. at 6. He also sought $1,000,000 from each defendant. Id.

## II. The Defendants' Motion for Judgment on the Pleadings (Dkt. No. 104)

### A. The Parties' Arguments

The defendants contend that the court should dismiss the plaintiff's Fourth Amendment claim because they are entitled to qualified immunity from damages and because his request for injunctive relief is moot. Dkt. No. 105 at 4. According to the defendants, the plaintiff cannot show that they violated a constitutional right that was clearly established at the time of the alleged violation because the Seventh Circuit did not establish a Fourth Amendment

3

right to privacy during visual searches for incarcerated individuals until 2020. Id. at 7.

The plaintiff responds that even if his claim on remand is "a straightforward fourth amendment claim," the "law was 'robust' enough in 2016 to put officials on notice that [the plaintiff] did have a limited right to privacy for intrusions of his unclothed body." Dkt. No. 115 at 4. According to the plaintiff, as the Henry court noted, every other circuit had recognized a Fourth Amendment right to privacy for incarcerated individuals in a limited way, and he asserts that "[t]he right seems relatively robust at least in the remainder of the geographic regions of the Country outside this Circuit." Id. at 6. The plaintiff contends that given this authority, his strip search, "which included an observer who was considered female by [the plaintiff] and his religion, the Defendants should have understood that they were likely or could well be infringing on [the plaintiff's] limited constitutional protection under the Fourth Amendment." Id. at 6-7. The plaintiff concludes that the defendants' qualified immunity defense should not be upheld. Id. at 7. The plaintiff also argues that his amended complaint contains a constitutional claim for violation of free exercise and that "it would seem there is still work to be done" on that claim and on the plaintiff's failure to intervene claim. Id. The plaintiff states that the court should address these claims on remand. Id.

B. Legal Standard

A party may move for a judgment on the pleadings after the pleadings are closed. Federal Rule of Civil Procedure 12(c). Under Rule 12(c), a motion for

4

judgment on the pleadings is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Adams v. City of Indianapolis, 742 F.3d 720, 728–29 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.' . . . Factual allegations are accepted as true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'" Id. at 729 (citations omitted).

As the name "motion for judgment on the pleadings" implies, "Rule 12(c) permits a judgment based on the pleadings alone." N. Ind. Gun & Outdoors Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998) (citations omitted). "The pleadings include the complaint, the answer, and any written instruments attached as exhibits." Id. (citing, *e.g.*, Fed. R. Civ. P. 10(c)). In considering a motion for judgment on the pleadings, this court may consider only the plaintiff's complaint, the defendants' answer and any documents either party attached to those to pleadings.

C. Analysis

The defendants have argued that they are entitled to qualified immunity. Qualified immunity "'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Figgs v. Dawson, 829 F.3d 895, 905 (7th Cir. 2016) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted)). Qualified immunity is an affirmative defense. To defeat the defendants'

5

assertion of qualified immunity, the plaintiff must show that 1) the defendants violated his constitutional right and 2) the right at issue was clearly established at the time of the violation. Pearson, 555 U.S. at 232. If the plaintiff fails to satisfy either inquiry, the defendants are entitled to qualified immunity. See Muhammad v. Pearson, 900 F.3d 898, 904 (7th Cir. 2018) (citing Gibbs v. Lomas, 755 F.3d 529, 537 (7th Cir. 2014)).

Qualified immunity generally is addressed at summary judgment rather than on the pleadings. Doe v. Purdue Univ., 928 F.3d 652, 665-66 (7th Cir. 2019), holding modified by Doe v. Samford Univ., 29 F.4th 675 (11th Cir. 2022) (citing Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) ("[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."); see also Jacobs v. City of Chicago, 215 F.3d 758, 765 n.3 (7th Cir. 2000) ("[T]he dismissal of a § 1983 suit under Rule 12(b)(6) is a delicate matter.")). "There is no hard-and-fast rule, however, against resolving qualified immunity on the pleadings." Doe, 928 F.3d at 665. Where the existence of qualified immunity is not dependent on factual development, or where it is clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law, "the existence of qualified immunity is a 'purely legal question' that the court can address on a motion to dismiss." Id. (quoting Jacobs, 215 F.3d at 765 n.3).

Most of the time, the reason for dismissal of a complaint on qualified immunity grounds is the lack of a clearly established constitutional right. See Jacobs, 215 F.3d at 765 n.3 ("[A] complaint may be dismissed under Rule

6

12(b)(6) on qualified immunity grounds where the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred."); Doe, 928 F.3d at 665 ("That said, the existence of qualified immunity is not always dependent on factual development—it is sometimes clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law."). "Ultimately, dismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" See Hanson v. LeVan, 967 F.3d 584, 590 (7th Cir. 2020) (quoting Behrens v. Pelletier, 516 U.S. 299, 306 (1996)).

To determine whether a right was clearly established, the court asks whether the contours of the allegedly violated right were, at the time of the strip search, "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Hanson v. LeVan, 967 F.3d 584, 596 (7th Cir. 2020) (quoting Kemp v. Liebel, 877 F.3d 346, 351 (7th Cir. 2017)). The court assumes that the plaintiff's well-pled allegations are true and asks whether, when defendant Buhle participated in the strip search of the plaintiff, Buhle would have understood that the plaintiff's Fourth Amendment rights were being violated. Id.

"Qualified immunity is an affirmative defense, but once the defendant raises it, 'the burden shifts to the plaintiff to defeat it.'" Taylor v. City of Milford, 10 F.4th 800, 806 (7th Cir. 2021); Sebesta v. Davis, 878 F.3d 226, 233 (7th

7

Cir. 2017) ("Though it is an affirmative defense for pleading purposes, the plaintiff carries the burden of showing that defendants are not immune."); Abbott v. Sangamon County, 705 F.3d 706, 723 (7th Cir. 2013) ("Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of defeating it."). A plaintiff has the burden to defeat qualified immunity "either by identifying a closely analogous case or by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." Abbott, 705 F.3d at 723–24. To satisfy the standard, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Clearly established law "must be 'particularized' to the facts of the case." White v. Pauly, 580 U.S. 73, 79 (2017). The "dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" See Mullenix v. Luna, 577 U.S. 7, 12 (2015).

As an initial matter, the court rejects the plaintiff's argument that it should consider on remand claims other than his Fourth Amendment claim. The court of appeals did not remand the plaintiff's First Amendment free exercise claim or a failure to intervene claim. The plaintiff's contention that this court should consider those claims is not supported by the record or legal authority.

Regarding the plaintiff's Fourth Amendment claim, in 2016 incarcerated individuals in the Seventh Circuit did not have a Fourth Amendment privacy

8

interest against visual inspections of their bodies. See King v. McCarty, 781 F.3d 889, 900 (7th Cir. 2015). The opinion in King holds that claims brought by incarcerated individuals for visual searches fail to state a claim upon which relief could be granted. See id. ("King has not alleged any intrusion into his body . . ., so even if we assume such treatment of a convicted prisoner is subject to the Fourth Amendment, he has failed to state a viable claim."). The plaintiff cannot meet his burden of showing that at the time of his search in 2016, it was clearly established that Buhle's observation of the plaintiff's strip search violated the plaintiff's Fourth Amendment rights. The law changed in 2020 with Henry v. Hulett, 969 F.3d 769 (7th Cir. 2020) ("[The Fourth Amendment protects a right to bodily privacy for convicted prisoners, albeit in a significantly limited way, including during visual inspections."). But Henry post-dates the plaintiff's strip search, so it is not relevant to the court's qualified immunity analysis. The defendants are entitled to qualified immunity on the plaintiff's Fourth Amendment claim for damages.

That leaves the plaintiff's claim for injunctive relief on his Fourth Amendment claim. In the amended complaint, the plaintiff sought injunctive relief prohibiting the defendants from allowing female staff to strip search him. In their motion for judgment on the pleadings, the defendants contend that this claim is moot because, in a separate order, the court has ordered injunctive relief on the plaintiff's Religious Land Use and Institutionalized Persons Act (RLUIPA) claim. Dkt. No. 105 at 9-11. The court recently has learned that the plaintiff has been released from prison. In West v. Kind, Case No. 23-3075,

2024 WL 2271843, at *3 (7th Cir. May 20, 2024), the court of appeals ordered that the plaintiff's RLUIPA claim for injunctive relief was moot because he was released from prison in January 2024. Id. (citing Grayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012)). Because the plaintiff has been released from prison, his request for injunctive relief is moot.[1]

### III. Conclusion

The court **GRANTS** the defendants' motion for judgment on the pleadings related to the plaintiff's request for damages on his Fourth Amendment claim. Dkt. No. 104.

The court **GRANTS IN PART** the defendants' motion to dismiss injunctive relief claims, as it relates to the plaintiff's Fourth Amendment claim for injunctive relief. Dkt. No. 117.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 12th day of June, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

[1] On May 31, 2024, the defendants filed a motion to dismiss the plaintiff's claims for injunctive relief as moot because he has been released from prison. Dkt. No. 127. The court will grant the defendants' motion as it relates to the plaintiff's Fourth Amendment claim. The defendants' motion also refers to the plaintiff's request for injunctive relief related to his RLUIPA claim, but as noted, the court addressed that request in a separate order.